WALLER, Chief Justice,
for the Court:
¶ 1. Edward Myers appeals his conviction for the armed robbery of Gabriel Lewis. We find that the trial court abused its discretion in excluding the testimony of a defense witness where there was no evidence of a willful discovery violation. Accordingly, we reverse Myers’s conviction and remand for a new trial. On remand, we direct the trial court to conduct a hearing to determine whether Myers’s right to a speedy trial was violated.
*1146 FACTS
¶ 2. On October 28, 2004, Edward Myers was at his sister Yvette’s house when he discovered that Yvette’s teenage son Jeremy had possession of a handgun. Myers and Jeremy got into an argument over the handgun outside Yvette’s house, and Myers was able to take the gun from Jeremy. Myers then fired the gun into the air twice. When Yvette heard the gunshots, she called the police. After she called the police, she followed Myers to see where he was going. She observed Myers walking along the railroad tracks towards a trucking lot about two blocks from her house. When he got to the lot, he got into a truck with another person, and Yvette saw them “light up,” meaning that they were smoking something. Yvette could not identify the other person in the truck.
¶ 3. Madison County Deputies John Harris and Stan Fisher responded to Yvette’s disturbance call. The officers parked next to the trucking lot to wait for backup. Shortly thereafter, Gabriel Lewis approached them from the trucking lot and informed them that he had just been robbed. Lewis, a truck driver for J.B. Hunt, had been picking up a trailer at the trucking lot when a man armed with a handgun approached him, demanding money. The man had told Lewis that he had just killed a man down the road and was trying to get out of town. Lewis had given the man five dollars, and the man had run off.
¶ 4. As the officers were inspecting the trucking lot, a man carrying a handgun appeared from under a trailer and fled on foot from the scene. Harris and Fisher pursued the man on foot and apprehended him after a short chase. The officers recovered a.22 caliber pistol loaded with eight rounds, a crack pipe, and five one-dollar bills from the man. The officers took the man into custody and took him back to their patrol cars, where Lewis was still waiting. Lewis identified the man, Edward Myers, as the man who had robbed him. The police took a statement from Lewis at the scene. Lewis identified Myers by name in his written statement, but at trial he testified that he had never met Myers and that the police had not told him Myers’s name.
¶ 5. A few days after his arrest, Myers gave a voluntary statement admitting to the robbery. Specifically, Myers stated, “I saw a man standing by his truck so I ran up to him with the pistol in my hand I asked him for some money. The man gave me four or five dollars and I ran off.” At trial, though, Myers’s version of events differed greatly from his written statement. He testified that he and Lewis had known each other for about six months at the time of the incident, and that Lewis had been buying drugs from him. On the night in question, Myers had run into Lewis at the trucking lot after leaving Yvette’s house. Lewis wanted to send Myers to get some drugs for him, but Myers already had some crack cocaine on his person. Myers and Lewis smoked the crack cocaine in Lewis’s truck, Lewis gave Myers five dollars for the drugs, and Myers left. Myers then saw lights from a patrol car, so he ran into the woods to dispose of the rest of the drugs. Myers testified that he saw the police talking to Lewis and came out of hiding to tell them that Lewis had not done anything wrong, but he ran away when he realized he had not gotten rid of all of his drugs. Myers explained that he did not mention any of this in his written statement because Lewis had told the police he was not pressing charges, and because he did not want to get Lewis in trouble.
PROCEDURAL HISTORY
¶ 6. A Madison County grand jury indicted Myers for armed robbery on Janu *1147 ary 4, 2005. The indictment alleged that on October 28, 2004, Myers had taken five dollars from Lewis against his will by exhibiting a deadly weapon. Myers’s first trial, held on June 24, 2008, resulted in a hung-jury mistrial. Myers’s second trial, held on August 7, 2008, also resulted in a mistrial because two defense witnesses were unavailable for trial. Myers’s third trial commenced on September 16, 2008.
¶ 7. On the day before Myers’s third trial, Myers’s attorney notified the trial court and the prosecution for the first time that Jacques Branch was present in court and available to testify. Branch’s testimony was “about the fact that he had seen Edward Myers and Gabriel Lewis together on different occasions and that’s basically rebuttal testimony of Mr. Lewis.” Myers’s attorney stated that she had been looking for a potential witness to give such testimony to corroborate Myers’s defense, but she could not find anyone even up to the date of Myers’s second trial. Myers had continued to search for potential witnesses, but he could not get in touch with Branch because he did not have Branch’s correct contact information. Myers finally was able to get in touch with Branch on the Friday before trial by contacting Branch’s niece. The trial court gave the prosecution an opportunity to interview Branch that evening and then revisited the issue the following day, after the State had rested its case-in-chief. The State never asked for a continuance or mistrial but continued to argue that Branch’s testimony should be excluded. The trial court held that Branch would not be allowed to testify, pointing out that two mistrials already had occurred, and that Myers had “had ample time since we were here last time to secure witnesses and had plenty of time to inform the State who those witnesses were.” The trial court did not explicitly rule that Myers had committed a willful discovery violation, but its ruling seems to imply such.
¶ 8. At the conclusion of that trial, the jury found Myers guilty of armed robbery. The trial court sentenced Myers to thirty-nine years’ imprisonment, with nine years suspended and five years of post-release supervision. The trial court denied Myers’s subsequent motions for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, and Myers appealed to this Court. On appeal, Myers argues that (1) the trial court improperly excluded a defense witness from testifying, (2) his right to a speedy trial was violated, and (3) the jury’s verdict was against the weight of the evidence. Finding the first two issues to be dispositive, we decline to address the weight of the evidence.
DISCUSSION
I. Whether the trial court erred in excluding the testimony of Jacques Branch.
¶ 9. Myers claims that the trial court abused its discretion by excluding the testimony of Jacques Branch. Myers alleges that Branch would have testified that Lewis and Myers knew each other prior to the incident in question, and that he had seen Myers and Lewis together on prior occasions.
¶ 10. Although the trial court did not give a specific reason for its exclusion of Branch’s testimony, the State alleges that Branch was excluded because Myers willfully had committed a discovery violation by failing to disclose him. “In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion.” Montgomery v. State, 891 So.2d 179, 182 (Miss.2004) (citing Conley v. State, 790 So.2d 773, 782 (Miss.2001)). This Court must determine *1148 “(1) whether such a violation occurred and, if so, (2) whether the exclusion of this evidence was an appropriate remedy.” Williams v. State, 54 So.3d 212, 213-14 (Miss.2011).
A. Whether Myers committed a discovery violation by failing to disclose Branch to the prosecution.
¶ 11. A defendant has a constitutional right to call witnesses in his or her favor. See U.S. Const, amend. VI; Miss. Const, art. 3, § 26 (1890). However, a defendant also must meet certain discovery requirements regarding the testimony of witnesses. Rule 9.04 of the Uniform Rules of Circuit and County Court Practice governs discovery procedures in criminal cases. According to that rule, the parties must disclose to each other the names and addresses of all witnesses in chief they intend to call at trial. URCCC 9.04(C). This rule applies to witnesses who are actually known by the parties, “or by the exercise of due diligence may become known.” Id. “Both the state and the defendant have a duty to timely supplement discovery.” URCCC 9.04(E). If, after initially complying with discovery procedures, a party discovers new evidence, that evidence must be disclosed promptly to the other party and, if trial already has commenced, to the trial court. Id.
¶ 12. Because matters of discovery violation are within the discretion of the trial court, this Court generally has deferred to the trial court’s ruling in cases where there is evidence that the defendant was dilatory in locating a witness or in disclosing the witness’s identity. For example, in Williams v. State, 54 So.3d 212, 213 (Miss.2011), the defendant was charged with murder for shooting a man outside a nightclub. The defendant claimed he shot the man in self-defense. Id. In support of his theory of the case, he planned to call as a witness the bouncer at the nightclub, who would testify that the victim was in possession of a gun on the night of the shooting. Id. The trial court did not allow the bouncer to testify about the victim’s possession of a gun because that fact had not been disclosed to the State during discovery. Id. On appeal, the defendant argued that the trial court had erred in excluding testimony regarding the victim’s possession of a gun. Id. The trial court had not found that the bouncer’s undisclosed testimony was actually known or should have been known by the defense, nor that it was not promptly disclosed to the prosecution. Id. This Court reasoned, “If none of these elements was present, then there was no discovery violation at all.” Id. However, this Court ultimately found that the trial court did not abuse its discretion in finding a discovery violation, because the record indicated that due diligence may not have been exercised by the defendant during discovery. Id. Specifically, the defendant’s attorney admitted that he had not begun preparing for the case until a month before trial, even though he had been appointed to the case for a year. Id. In addition, the bouncer was not interviewed by the defense until the week before trial. Id. Accordingly, this Court affirmed the trial court’s finding that the defendant had committed a discovery violation. Id.
¶ 13. Here, although the trial court did not specifically rule that Myers had committed a discovery violation, evidence in the record supports such a finding. Initially, it appears that Myers and his attorney complied with discovery requirements by disclosing to the State all known witnesses. Rule 9.04 requires the disclosure of information that is known, or, “by the exercise of due diligence may become known, to the defendant or defendant’s counsel.” URCCC 9.04(C) (emphasis added). While the record suggests *1149 that Myers’s attorney had no knowledge of Branch or his specific testimony, Myers clearly knew of Branch’s identity, if not his contact information, well before trial. But Myers failed to disclose this information to the prosecution or even to his own attorney. If Myers had disclosed Branch’s identity in a timely manner, it is possible that Branch could have been located sooner. At the very least, Branch’s identity could have been disclosed to the prosecution prior to the day before trial.
¶ 14. Giving deference to the trial court’s ruling on this matter, as our standard of review requires, we find that the trial court did not abuse its discretion in finding that Myers had committed a discovery violation by failing to disclose Branch to the prosecution in a timely manner. See Morris v. State, 927 So.2d 744, 747 (Miss.2006) (affirming trial court’s exclusion of defense witness testimony where the record supported the finding of a willful discovery •violation, even though the trial court did not specifically make such a finding). Even so, this Court must still determine whether the exclusion of Branch’s testimony was the proper remedy-
B. Whether the exclusion of Branch’s testimony was the proper remedy.
¶ 15. Prior to trial, if the court determines that a party has violated discovery procedures, it may order the discovery of the information not previously disclosed, grant a continuance, or “enter such an order as it deems just under the circumstances.” Morris, 927 So.2d at 747; URCCC 9.04(1). The weight of the sanction should be based on the motivation of the offending party in violating the discovery rule. Coleman v. State, 749 So.2d 1003, 1009 (Miss.1999). The general rule is that evidence must not be excluded. Williams, 54 So.3d at 215 (citing Morris, 927 So.2d at 747). But where the court determines that a discovery violation is “willful and motivated by a desire to obtain a tactical advantage,” exclusion of the evidence may be entirely proper. Darby v. State, 538 So.2d 1168, 1176 (Miss.1989). Nevertheless, exclusion of evidence is a radical sanction that “ought be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage.” Houston v. State, 531 So.2d 598, 612 (Miss.1988). The court cannot disregard the “fundamental character of the defendant’s right to offer the testimony of witnesses in his favor.” Coleman v. State, 749 So.2d 1003, 1009-10 (Miss.1999) (citation omitted).
¶ 16. The fact that evidence was recently discovered, by itself, is insufficient proof that a discovery violation was willful and motivated by a desire to obtain a tactical advantage. Williams, 54 So.3d at 215. As discussed previously, this Court in Williams found sufficient evidence of a discovery violation where the defendant had failed to disclose certain witness testimony to the prosecution. Id. at 214. However, this Court then reasoned, “It would be a mistake to adopt a posture in which we assume that recently discovered evidence is part of some scheme to defraud justice and require the defendant to prove otherwise.” Id. at 215. Because the defense had disclosed the identity of the witness, had provided a partial summary of his testimony, and had disclosed the newly discovered testimony before the witness took the stand, this Court held that the untimeliness of such disclosure alone was not enough to prove a willful discovery violation. Id.
¶ 17. We find that the evidence in this case does not evince a willful discovery violation. First, no evidence indicates that Myers’s attorney was aware of Branch’s identity prior to the day he *1150 showed up for trial. In addition, the defense disclosed Branch prior to trial, giving the prosecution an opportunity to prepare for his testimony. In ruling that Branch’s testimony would be excluded, the trial court seemed most concerned with the fact that Myers’s two previous trials had resulted in mistrials. The first mistrial was the result of a hung jury and cannot arguably be attributed to the defendant. The second mistrial was due to a death in Myers’s family which caused Yvette, an unsubpoenaed witness, to be unavailable for trial. These setbacks do not suggest to this Court that Myers deliberately was attempting to delay his trial. The trial court was concerned with the timing of Branch’s disclosure, but that alone is not sufficient evidence to justify the “radical sanction” of exclusion of evidence. Houston, 531 So.2d at 612. Because there is insufficient evidence that Myers’s alleged violation of Rule 9.04 was motivated by a desire to obtain a tactical advantage, we find that the trial court erred in excluding Branch’s testimony.
¶ 18. However, such error requires reversal only if Myers can show that he was prejudiced or harmed by the exclusion of the evidence. Jackson v. State, 594 So.2d 20, 25 (Miss.1992). This Court has found prejudice where the trial court excludes evidence that tended to support the defendant’s theory of the case. For example, in Williams, 54 So.3d at 216, this Court found prejudicial error in the exclusion of the bouncer’s testimony that the victim had a gun on the night of the shooting because this testimony corroborated the defendant’s theory of self-defense. Also, in Ross v. State, 954 So.2d 968, 1001 (Miss.2007), this Court found prejudicial error in the exclusion from evidence of a State witness’s prior written and recorded statements, which contradicted her testimony at trial. Even though the defense was allowed to impeach the witness with her prior inconsistent statement, this Court still found that the exclusion of the written and recorded statements themselves from evidence prejudiced the defendant’s case. Id. The witness’s testimony was the only evidence linking the defendant to the crime, and her credibility was a critical issue that the jury needed to consider. Id.
¶ 19. We find that Myers’s defense was substantially prejudiced by the trial court’s exclusion of Branch’s testimony. This case featured sharply contrasting evidence, with the credibility of each side’s version of events playing a critical role in the jury’s deliberations. At Myers’s first trial, Harold Small corroborated Yvette’s testimony as well as Myers’s own testimony that Myers was smoking crack cocaine with Lewis in the truck when the police arrived. The fact that Myers’s first trial ended with a hung jury is strong evidence of the importance of such testimony, which clearly strengthened Myers’s theory of the case. Delays beyond Myers’s control caused Small to be unavailable for Myers’s third trial. As Small was no longer available, Branch’s testimony became critical to Myers’s defense. Most importantly, Branch’s testimony would have directly contradicted Lewis’s claims that he did not know Myers, especially in light of the fact that Lewis used Myers’s name in his written statement to the police. In addition, Branch’s testimony would have helped explain Myers’s justification for initially admitting to a robbery rather than telling the police the truth about Lewis. Finally, Branch’s testimony would have allowed the jury to infer that Lewis was the unidentified man Yvette saw smoking with Myers at the trucking lot. When considering the opposing theories presented to the jury, Branch’s testimony was critical to supporting Myers’s defense, and the exclusion of Branch’s testimony was prejudicial error.
*1151 II. Whether Myers’s right to a speedy trial was violated.
¶ 20. Myers argues that his constitutional and statutory rights to a speedy trial were violated because his first trial did not commence until 1,335 days after his arrest and 830 days after his arraignment. As an initial matter, the State argues that Myers’s speedy-trial claims are procedurally barred because he did not pursue the issue to a ruling by the trial court. This argument is incorrect. The United States Supreme Court has rejected the notion that a defendant can waive the right to a speedy trial forever by failing to timely assert it. Barker, 407 U.S. at 528, 92 S.Ct. 2182. As this Court held in Brengettcy v. State, 794 So.2d 987, 994 (Miss.2001), “While failure or delay in raising a speedy trial claim may cost a defendant points in the Barker analysis, there is no procedural bar solely for failing to properly pursue the claim in open court.” See also Flores v. State, 574 So.2d 1314, 1323 (Miss.1990) (holding that defendant’s “failure to consistently badger the prosecution” to bring him to trial did not eliminate his speedy-trial claim). Therefore, we do not find Myers’s constitutional speedy-trial claim to be procedurally barred.
¶21. Myers was arrested on October 28, 2004. On June 6, 2005, Myers sent a letter to the Madison County circuit clerk inquiring into the status of his case and requesting to be put on the “Court list.” Myers later mailed a pro se “Motion to dismiss charges for failure to provide a fast and speedy trial,” but the record does not indicate whether this motion was ever filed or served on the State.[1] After this date, the record is silent regarding Myers’s speedy-trial claim. Myers was appointed counsel on March 17, 2006, but no other motions were filed or arguments made regarding the speedy-trial claim. The above correspondence is the only evidence presently in the record relating to Myers’s speedy-trial claim.
¶ 22. The current state of the record in this case places this Court in the precarious position of analyzing • Myers’s speedy-trial claim for the first time on appeal, without the benefit of a trial court hearing or ruling on the issue. This Court’s standard of review for speedy-trial challenges is as follows:
Review of a speedy trial claim encompasses a fact question of whether the trial delay rose from good cause. Under this Court’s standard of review, this Court will uphold a decision based on substantial, credible evidence. Folk v. State, 576 So.2d 1243, 1247 (Miss.1991). If no probative evidence supports the trial court’s finding of good cause, this Court will ordinarily reverse. [M] The state bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion. Flores v. State, 574 So.2d 1314, 1318 (Miss.1990).
DeLoach v. State, 722 So.2d 512, 516 (Miss.1998). Where the parties have had the benefit of a hearing on the issue, but the trial court’s analysis of the Barker factors is lacking, this Court has found it appropriate to perform a de novo review of the defendant’s speedy-trial claim. See id. at 517 (conducting a de novo speedy-trial analysis where the trial court failed to articulate its reasons for denying the defendant’s motion to dismiss for lack of a speedy trial); Flora v. State, 925 So.2d 797, 817 (Miss.2006) (“Although on the record before us we are unable to allocate a specific number of days of delay to each party, we are persuaded that sufficient good cause was shown related to matters *1152 beyond the control of the State, for us to uphold the decision by the trial court.”). On the other hand, where the record lacks sufficient evidence to support a proper de novo review, the more appropriate course is to remand to the circuit court to conduct a Barker analysis. See McGee v. State, 608 So.2d 1129,1134 (Miss.1992) (reversing and remanding to the trial court for a Barker analysis where the record did not establish the actual reasons for the delays in the defendant’s trial). See also Barnes v. State, 577 So.2d 840, 844 (Miss.1991) (reversing defendant’s conviction due to ineffective assistance of counsel, remanding for a new trial, and directing the trial court on remand to conduct a Barker analysis, where the record on appeal did not allow this Court to determine the cause of the delay in the defendant’s previous trial).
¶ 23. Under the facts of this particular case, we decline to review Myers’s speedy-trial claim for the first time on appeal. In a case such as this, where the length of the delay is presumptively prejudicial, the prosecution must present evidence justifying the delay. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991). Here, the State was never given the opportunity before the trial court to carry its burden to show good cause for the delay in bringing Myers to trial, and it cannot present new evidence on appeal to make such a showing. See McGee v. State, 40 So.2d 160,165 (Miss.1949) (quoting Pacific R. Co. of Mo. v. Ketchum et al., 101 U.S. 289, 25 L.Ed. 932 (1879)) (“ ‘We take a case on appeal as it comes to us in the record, and receive no new evidence.’ ”). Nor can Myers present this Court with new evidence, not presented to the trial court, demonstrating prejudice resulting from the delay in his trial. See Barker, 407 U.S. at 532, 92 S.Ct. 2182. Without more specific evidence explaining the reasons for the delay in Myers’s trial, we cannot accurately determine the ultimate factual question of whether good cause existed for the delay in this case. See Folk, 576 So.2d at 1247 (“A finding of good cause is a finding of ultimate fact.”). Therefore, it would be inappropriate for us to rule on Myers’s speedy-trial claim for the first time on appeal.
¶ 24. As previously discussed, this case is being remanded for a new trial. Prior to Myers’s new trial, the trial court shall conduct a hearing on Myers’s speedy-trial claim and allow the parties to present evidence relevant to the Barker analysis. If, after the hearing, the trial court determines that Myers’s right to a speedy trial was violated, it shall dismiss the charges against Myers, as that is the sole remedy for a speedy-trial violation. Price v. State, 898 So.2d 641, 647 (Miss.2005). If no speedy-trial violation is found, the case shall proceed to trial.
CONCLUSION
¶ 25. For the foregoing reasons, we reverse Myers’s conviction and remand this case to the Madison County Circuit Court for further proceedings consistent with this opinion.
¶ 26. REVERSED AND REMANDED.
RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, CHANDLER AND KING, JJ.

. The certificate of service accompanying this motion was left blank.