# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01060-SCT

*JIKIEL T. JONES a/k/a JIKIEL TRAQWOYNE JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| TRIAL COURT ATTORNEYS: | STEVEN KILGORE |
| | CHRIS POSEY |
| | MITCHELL D. THOMAS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/05/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. A jury convicted Jikiel Jones of armed robbery, armed carjacking and kidnapping in Scott County Circuit Court. On direct appeal, Jones raises three errors: (1) that the trial court erred by excluding his alibi witness, (2) that the trial court erred by granting a deficient accomplice jury instruction and (3) that the State failed to disclose exculpatory evidence before trial.

¶2.     After review of the first issue, we find that the trial court abused its discretion by excluding the testimony of Jones's alibi witness. While a per se violation of Mississippi Rule of Criminal Procedure 17.4(a) did occur, this violation cannot be held against Jones in light of his original counsel's conflict of interest. Further, there is no indication in the record that Jones's failure to notice the prosecution of his alibi witness was willful or motivated by a desire to obtain a tactical advantage. Thus, we reverse Jones's conviction and remand the case for a new trial.

¶3.     As to Jones's second issue on appeal, the accomplice jury instruction given at trial was deficient. On remand, should the trial court determine that Jones is entitled to an accomplice jury instruction, the proper instruction is to be given. Last, Jones waived his right to appeal the prosecution's failure to disclose exculpatory evidence by failing to object at trial.

**FACTS**

¶4.     At trial, the following facts were established. On the afternoon of November 30, 2014, Walter Felix Ramirez was vacuuming his Mazda 6 at a car wash on East Third Street in Forest, Mississippi. Johndarious Anderson and Jikiel Jones approached Ramirez at his car, intending to steal money. They beat Ramirez, took his wallet and phone, forced him into the back seat of his car and drove away from the car wash. While Anderson drove, Jones sat in the backseat and held Ramirez at knifepoint. Anderson testified that he and Jones had planned on killing Ramirez. Anderson, however, soon took a curve too fast and crashed the vehicle.

2

¶5.     Chad Brantley heard the wreck and went to investigate. Upon arriving at the scene, Brantley saw Jones and Anderson running down the road away from the wreck. Brantley also saw Ramirez outside of the vehicle. Brantley stopped Jones and Anderson momentarily. One of them told him, "Don't call the law." Brantley called the sheriff's office and was informed that the car was likely stolen and that there had been a reported kidnapping. Brantley then pursued Jones and Anderson. He intercepted the two and held Anderson at gunpoint until law enforcement arrived.[1] Jones escaped into the nearby woods.

¶6.     Law enforcement arrested Anderson that day. Jones was arrested several weeks later.

¶7.     Upon his arrest, Anderson gave contradictory statements to law enforcement. At first, he stated that he simply witnessed two of his friends Jockell Ledbetter and Tywon "Ty" Roberson attacking Ramirez. He stated that he got in the car with them. Five days after his arrest, Anderson gave a second statement that implicated him and Joc (Jones's nickname). The second statement did not mention Tywon Roberson. Also, in the second statement, Anderson admitted his own participation in the crimes for the first time.

**PROCEDURAL HISTORY**

¶8.     On November 21, 2016, a grand jury indicted Anderson and Jones for armed robbery,

---

[1] At trial, Brantley identified Jones as the individual who had gotten away from him when he held Anderson at gunpoint. On cross-examination, counsel asked Brantley if he recalled that he had mentioned to law-enforcement officers that he could not identify Jones as the person who had gotten away from him. Brantley then detailed his participation in a photograph lineup identification. According to Brantley, he had narrowed the lineup down to two photographs but had guessed incorrectly between the two. On redirect, Brantley reiterated that he was certain that Jones was the man that he had seen at the scene.

armed carjacking and kidnapping. Anderson pleaded guilty to the charges on February 1, 2017. James Smith represented Anderson during his guilty plea. A condition of Anderson's plea bargain required him to testify at Jones's trial if the State chose to call him.

¶9.     Jones was arraigned on August 25, 2017. That same day, Smith (Anderson's attorney) was appointed to represent Jones. There is no indication in the record that Jones had counsel before then.

¶10.    On the evening of Thursday, October 12, 2017—seven days before Jones's scheduled trial date of October 19, 2017—Smith realized that he had a conflict of interest due to his representation of Anderson. That evening, Smith told Mitchell Thomas that Thomas would have to represent Jones. Thomas agreed to the representation.[2]

¶11.    Thomas first met with Jones on Friday, October 13, 2017. During this meeting, Thomas first learned of Jones's alibi defense. According to Jones, his grandfather James Ledbetter would testify that Jones was at Ledbetter's home on November 30, 2014. Thomas met with Jones again on Monday, October 16, 2017, to discuss Jones's defense.

¶12.    According to Thomas, he realized on the morning of Tuesday, October 17, 2017, that Rule 17.4(a)(1) of the Mississippi Rules of Criminal Procedure required Jones to notice the prosecutor of an alibi witness no less than ten days after the prosecutor's written demand.[3]

_____

[2] There is no notice of appearance by Thomas or a notice of withdrawal by Smith in the record before this Court. The parties, though, do not contest that the reassignment of the case was effective.

[3] While no signed and dated demand appears in the appellate record, the prosecution represented in the trial court that it served its written demand for notice on September 5,

4

Thomas prepared and filed a notice of alibi that morning. The notice of alibi provided that "James Ledbetter, grandfather of Jikiel Jones, will testify that on November 30, 2014, prior to noon and throughout the afternoon and evening, Jikiel was with him at his house on Sherman Hill Rd. in Scott County, Mississippi helping him work around the house and tend to horses."

¶13. After voir dire, the State moved to exclude Ledbetter's testimony. Thomas responded that he did not intend to surprise the prosecution but that, given the gravity of the offenses, it would be "absolutely destructive" to Jones's defense to exclude Ledbetter's testimony. The trial court then asked the State if it would like to interview Ledbetter and stated, "I'm not going to exclude him as a witness at this time." The State then interviewed Ledbetter.

¶14. Once the State had presented its case and had rested, it renewed its motion to exclude Ledbetter's testimony. The State argued that the two-day notice was insufficient for it to have prepared to rebut Ledbetter's testimony.

¶15. Thomas responded to the State's motion. He explained his late assignment to the case and reviewed the timeline of events with the trial court. Thomas took full responsibility for the timeliness issue and emphasized the necessity of the alibi to Jones's case. The trial court then asked, "[D]id your colleagues in the Public Defenders' Office . . . advise you that this client, Jikiel Jones, had previously talked to them about an alibi?" Thomas responded, "Yes,

2017. Jones did not respond to this claim before the trial court and does not raise the issue on appeal. So we accept that the written demand was served on September 5, 2017, forty-five days before trial.

5

I recall discussing that, Your Honor." Thomas clarified, though, that his colleagues had not told him anything about the case before his assignment late on Thursday, October 12.

¶16.    The State replied to Thomas's argument and maintained that the public defender's office knew about the alibi defense before Thomas's assignment to the case. Thomas did not dispute that the public defender's office knew about the alibi before his assignment to the case.

¶17.    The trial court excluded Ledbetter's testimony, given the "overwhelming" prejudice to the State. It emphasized the untimeliness of the notice and the vague description of Ledbetter's anticipated testimony.

¶18.    The defense then rested, and the jury convicted Jones of all three counts. Jones now appeals and raises three issues. First, he contends that the trial court erred when it excluded Ledbetter's testimony. Second, Jones maintains that the trial court erred by granting the State's accomplice instruction. Third, Jones alleges that the State failed to disclose exculpatory evidence in discovery.

¶19.    After review, we determine that the trial court erred by excluding Ledbetter's testimony and that the error was prejudicial to Jones. Thus, we reverse Jones's conviction and remand the case for a new trial.

## ANALYSIS

### I.    Alibi Testimony

¶20.    Jones argues that the trial court abused its discretion by excluding the alibi testimony

of his grandfather James Ledbetter. The State contends that the trial court properly excluded the testimony because Jones's initial counsel did not timely respond to the prosecution's written demand for notice of alibi witnesses. We agree with Jones.

¶21. "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion." *Myers v. State*, 145 So. 3d 1143, 1147 (Miss. 2014) (internal quotation marks omitted) (quoting *Montgomery v. State*, 891 So. 2d 179, 182 (Miss. 2004)). This Court's review of a trial court's exclusion of evidence is two-fold. *Id.* at 1147–48. It "must determine '(1) whether such a violation occurred and, if so, (2) whether the exclusion of this evidence was an appropriate remedy.'" *Id.* (quoting *Williams v. State*, 54 So. 3d 212, 213–14 (Miss. 2011)).

¶22. A per se violation of Rule 17.4(a)(1) occurred before Jones's trial. As we will discuss regarding the appropriate sanction, though, the violation of Rule 17.4 should not result in the exclusion of the testimony, given Smith's conflict of interest.

### A. Rule 17.4

¶23. "A defendant has a constitutional right to call witnesses in his or her favor." *Myers*, 145 So. 3d at 1148 (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26). Nevertheless, Rule 17.4(a)(1) of the Mississippi Rules of Criminal Procedure requires the defendant to serve notice of an alibi defense within ten days upon receipt of a written demand from the prosecutor. MRCrP 17.4(a)(1).

¶24. The prosecutor served his written demand on Jones on September 5, 2017, forty-five

days before trial. Jones filed his notice of alibi two days before trial, forty-three days after the written demand. Plainly, Jones's filing did not comply with Rule 17.4(a)(1).

¶25.   The record indicates, though, that Jones had informed his previous attorney, Smith, of his alibi before the case was assigned to Thomas on the Thursday evening before trial. Thomas stated that he recalled discussing the fact that Jones had previously told Thomas's colleagues in the public defender's office of his alibi. Thomas made it clear, though, that this conversation had happened after he took Jones's case on Thursday evening. Also, the State's argument in the trial court was predicated on the fact that Smith knew of Jones's alibi and did not timely respond to the written demand.[4]   On appeal, the State advances a similar argument that Smith could have complied with Rule 17.4(a)(1).

¶26.   Thomas learned of Jones's alibi on the Friday before the trial. After the weekend, Thomas met again with Jones to discuss his case and defense. On Tuesday, Thomas filed the notice of alibi. As Thomas conceded to the trial court, Jones was already in violation of Rule 17.4(a)(1) when Thomas began his representation. Thus, we find that Jones did not comply with Rule 17.4(a)(1)'s requirement to respond within ten days of the prosecution's written demand.

### B.   Appropriate Sanction

¶27.   On this record, though, Ledbetter's testimony should not have been excluded, given

---

[4] The prosecutor argued, "The Public Defenders' Office knew about the alibi outside of the ten days. If Mr. Smith had filed a Notice of Alibi, that would have been sufficient." Presumably, the prosecutor meant that Smith knew of the alibi *within* the ten days.

Smith's conflict of interest with his representation of both Anderson and Jones. As Thomas

filed the notice of alibi only five days (including a weekend) after he began representing

Jones, we find that the trial court abused its discretion in excluding Ledbetter's testimony.

¶28.   Rule 17.4(a)(2) lists the sanctions available against either party when a failure to

comply with Rule 17.4 occurs. MRCrP 17.4(a)(2). It provides,

> Upon the failure of either party to comply with subsection (a)(1), the court may
> use such sanctions as it deems proper, including:
>
> (A)   Granting a continuance;
> (B)   Limiting further discovery of the party failing to comply;
> (C)   Finding the attorney failing to comply in contempt; or
> (D)   Excluding the testimony of the undisclosed witness.

MRCrP 17.4(a)(2). The weight of the sanction should be based on the motivation of the

offending party in violating the discovery rule. *Myers*, 145 So. 3d at 1149 (citing *Coleman*

*v. State*, 749 So. 2d 1003, 1009 (Miss. 1999)).

¶29.   "The general rule is that evidence must not be excluded." *Myers*, 145 So. 3d at 1149

(citing *Williams v. State*, 54 So. 3d 212, 215 (Miss. 2011)). In fact, "[i]n the context of

discovery violations, exclusion of evidence is a radical sanction that should rarely be used."

*Williams*, 54 So. 3d at 215 (citing *Houston v. State*, 531 So. 2d 598, 612 (Miss. 1988)). "But

where the court determines that a discovery violation is 'willful and motivated by a desire

to obtain a tactical advantage,' exclusion of the evidence may be entirely proper." *Myers*,

145 So. 3d at 1149 (quoting *Darby v. State*, 538 So. 2d 1168, 1176 (Miss. 1989)). The trial

court, though, "cannot disregard the 'fundamental character of the defendant's right to offer

9

the testimony of witnesses in his favor.'" *Id.* (quoting *Coleman*, 749 So. 2d at 1009–10).

¶30.    Governing Smith's representation of Anderson and Jones, Mississippi Rule of Professional Conduct 1.7 provides that

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
>
> (1) the representation will not adversely affect the relationship with the other client; and
>
> (2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.

Miss. R. Prof'l Conduct 1.7(a).

¶31.    In light of the general rule that evidence must not be excluded, we note at the outset of our analysis that the trial court made no findings as to Jones's motives in violating Rule 17.4 or even the facts surrounding the filing of the notice.  The trial court only found the notice to be "untimely" and "extremely prejudicial."  First, the untimeliness of the notice is not disputed and is not attributable to Jones since Smith had a conflict of interest.  Second, the inherent nature of alibi witnesses makes them prejudicial to the prosecution.

¶32.    The untimeliness of Jones's alibi notice should not have resulted in the exclusion of the testimony because of Smith's conflict of interest.  Smith had an actual conflict of interest due to his representation of Anderson.  Miss. R. Prof'l Conduct 1.7(a); *see also* Miss. R. Prof'l Conduct 1.9 (former clients).  This conflict existed the moment that Smith accepted

10

the appointment to represent Jones.[5] Jones and Anderson were indicted together for the same crimes, and Smith had represented Anderson at his guilty plea before accepting the appointment to represent Jones. Nothing in the record suggests that Smith had withdrawn from his representation of Anderson nor that Smith had received Jones's written consent to waive the conflict of interest.[6] Further, the court that sentenced Anderson retained jurisdiction over Anderson to compel his testimony at Jones's trial.

¶33. In light of this conflict and without any indiction that the failure to comply with Rule 17.4(a) was willful, we only consider the amount of time that Thomas knew of Jones's alibi before providing notice to the prosecution when considering the length of the discovery violation. Jones told Thomas of the alibi the Friday before trial. Thomas discussed Jones's defense and the alibi with Jones on Monday. On Tuesday, Thomas notified the prosecution of the alibi. While Thomas may have been able to notify the prosecution before Tuesday, his five-day delay does not support exclusion of Jones's alibi witness on its own.

---

[5] Smith had a duty to withdraw from his representation of Jones. *See* Miss. R. Prof'l Conduct 1.16(a)(1) ("[A] lawyer . . . shall withdraw from the representation of a client if . . . the representation will result in violation of the rules of professional conduct or other law. . . ."). In fact, had Smith continued his representation of Jones rather than reassigning the case to Thomas, Jones would have had an unassailable case on appeal for ineffective assistance of counsel. *See* ***Kiker v. State***, 55 So. 3d 1060, 1066 (Miss. 2011) ("When the accused is represented by an attorney with an actual conflict of interest, the accused has received ineffective assistance of counsel as a matter of law, and 'reversal is automatic irrespective of a showing of prejudice' . . . ." (quoting ***Armstrong v. State***, 573 So. 2d 1329, 1335 (Miss. 1990))).

[6] There is no suggestion in the record that Smith's conflict of interest was intentional. While the conflict of interest may have been the result of oversight or neglect, on appeal, we treat it as it is: an actual conflict of interest.

11

¶34. There is no indication in the record that Jones willfully violated Rule 17.4. Thomas recalled that after he had begun representing Jones, he had discussed with his colleagues the fact that Jones had previously informed them of his alibi. Also, the State maintained in the trial court that Smith knew of Jones's alibi.

¶35. Given Smith's conflict of interest, the support in the record for the fact that Jones had informed Smith of his alibi and Thomas's short delay in filing the notice of alibi, we find that the trial court abused its discretion in excluding Ledbetter's testimony. "The general rule is that evidence must not be excluded." *Myers*, 145 So. 3d at 1149 (citing ***Williams***, 54 So. 3d at 215). Further, there is no suggestion that either Jones or his counsel willfully withheld evidence from the prosecution or the court. Because of Smith's conflict of interest and because the record does not indicate that the violation of Rule 17.4(a)(1) was motivated by a desire to gain a tactical advantage, the trial court abused its discretion in excluding the testimony.[7]

¶36. "However, such error requires reversal only if [the defendant] can show that he was prejudiced or harmed by the exclusion of the evidence." *Myers*, 145 So. 3d at 1150 (citing ***Jackson v. State***, 594 So. 2d 20, 25 (Miss. 1992)). "This Court has found prejudice where

---

[7] While the State did not object to the notice of alibi for vagueness, the trial court maintained that the notice was too vague, in addition to its being untimely. We conclude that the notice of alibi was not so vague that it failed to provide notice to the prosecution. The notice provided that Ledbetter, Jones's grandfather, would testify that Jones was with Ledbetter at his home on the day of the crime before noon and throughout the afternoon and evening.

the trial court excludes evidence that tended to support the defendant's theory of the case."

*Id.* (citing *Williams*, 54 So. 3d at 216; *Ross v. State*, 954 So. 2d 968, 1001 (Miss. 2007)).

¶37.    The exclusion of Ledbetter's testimony was prejudicial to Jones's defense because the ruling deprived him of his right to present his theory of the case. Ledbetter's testimony would have informed the jury of Jones's whereabouts at the time of the crime. Without it, defense counsel could not argue to the jury that Jones was not there.

¶38.    After Ledbetter's testimony was excluded, the defense simply rested without calling any witnesses. Jones declined to testify. Jones, though, had and has a right to offer the testimony of witnesses in his favor. *Myers*, 145 So. 3d at 1148 (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26). Exclusion of a witness "is a radical sanction that should rarely be used." *Williams*, 54 So. 3d at 215.

¶39.    While defense counsel aptly noted the weaknesses of the State's case in closing argument,[8] without Ledbetter's testimony, counsel was unable to argue to the jury that Jones had not been present during the commission of the crime. Therefore, on the facts of this record, the trial court's exclusion of the alibi witness's testimony was an abuse of discretion. We reverse Jones's conviction on this ground and remand the case for a new trial.

---

[8] Anderson received a plea deal that was conditioned on his testimony at Jones's trial. He also gave conflicting statements to law enforcement. No forensic evidence placed Jones at the scene. Further, Brantley admitted that he was unable initially to identify Jones from a photo lineup. Last, Ramirez could not identify Jones in the courtroom despite testifying that the person who held him at knifepoint in the back seat of the car had not worn a mask.

## II.    Accomplice Jury Instruction

¶40.    At trial, Jones requested the following cautionary instruction:

> The Court instructs the jury that the law looks with suspicion and distrust on the testimony of an alleged accomplice or informant, and requires the jury to weigh that testimony with great care and suspicion.  You should weigh the testimony from an alleged accomplice or informant, and passing on what weight, if any, you should give this testimony, you should weigh it with great care and caution, and look upon it with distrust and suspicion.

The State objected and tendered the following jury instruction, which the trial court gave:

> The Court instructs the Jury that Johndarious Anderson is Jikeal [sic] Traqwoyne Jones, alleged accomplice in this case.  If you find that any of their [sic] testimony is not supported by other evidence in this case, then you should consider their testimony with great care, caution, suspicion and distrust.
>
> An accomplice is a person who intentionally and voluntarily joins with another person in committing a crime.

¶41.    The grant of an accomplice jury instruction is reviewed for an abuse of discretion. *Brown v. State*, 890 So. 2d 901, 910 (Miss. 2004) (citing *Burke v. State*, 576 So. 2d 1239, 1242 (Miss. 1991)).  This Court has held that "[d]efendants are entitled to have instructions on their theory of the case presented to the jury for which there is foundation in the evidence, even though the evidence might be weak, insufficient, inconsistent or of doubtful credibility. . . ." *Lamarcus Jones v. State*, 203 So. 3d 600, 609 (Miss. 2016) (internal quotation marks omitted) (quoting *Alexander v. State*, 749 So. 2d 1031, 1037 (Miss. 1999)).  "Clear law in the State of Mississippi is that the jury is to regard the testimony of co-conspirators with great caution and suspicion." *Williams v. State*, 32 So. 3d 486, 490 (Miss. 2010) (internal quotation marks omitted) (quoting *Derden v. State*, 522 So. 2d 752, 754 (Miss. 1988)).  That

14

said, though, "[t]he testimony of an accomplice is not required to be viewed with great caution and suspicion just because he is an accomplice, but instead it is only that portion of an accomplice's testimony which is uncorroborated by other evidence which is viewed with great caution and suspicion." *Smith v. State*, 907 So. 2d 292, 298 (Miss. 2005). "When determining whether a defendant is entitled to such a cautionary instruction, the trial judge considers whether the witness was in fact an accomplice and whether the witness's testimony was corroborated." *Williams*, 32 So. 3d at 490 (citing *Brown v. State*, 890 So. 2d 901, 910 (Miss. 2004)).

¶42.   On remand, if Jones requests an accomplice jury instruction and if the evidence in the record demonstrates that he is entitled to the instruction, the trial court should give the instruction detailed in *Lamarcus Jones v. State*. *Jones*, 203 So. 3d at 611–12. It provides,

> During the course of his testimony in this trial, the witness John Doe claimed to have participated with the defendant in [the crime for which the defendant is on trial]. Doe is an admitted accomplice, and, as such, the jury should consider his testimony with great caution and suspicion. The jury is the sole judge of the credibility and the believability of all the witnesses, and it is for the jury to decide how much weight and worth, if any, to give the testimony of the witnesses, including Doe. As you consider Doe's testimony, you may accept such portions, if any, that you deem credible, and reject such portions, if any, that you do not deem worthy of belief.

*Id.*

### III.   Exculpatory Evidence

¶43.   Last, Jones contends that Brantley's participation in a photograph-lineup identification of Jones was exculpatory and should have been disclosed by the State in discovery. Jones,

15

though, waived his right to appeal the exculpatory-evidence-disclosure issue by not making a contemporaneous objection during trial when the violation became apparent during the cross-examination of Brantley. Miss. R. Evid. 103(a). Regardless, Jones is now aware of Brantley's participation in the photograph-lineup identification. Given the remand for a new trial, we decline to address the issue any further.

## CONCLUSION

¶44. Given the conflict of interest of Jones's initial counsel, we hold that the trial court abused its discretion in excluding the testimony of Jones's alibi witness. Further, no indication in the record shows that Jones's failure to comply with Mississippi Rule of Criminal Procedure 17.4(a) was motivated by a desire to gain a tactical advantage. We, therefore, reverse Jones's conviction and remand the case for a new trial.

¶45. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**