# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01273-COA

**MOHAMED MOHAMED A/K/A MOHAMED ANAGI MOHAMED**                                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2019 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TERRIS CATON HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/20/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     A Washington County Circuit Court jury convicted Mohamed Mohamed of drug trafficking in violation of Mississippi Code Annotated section 41-29-139 (Supp. 2014). The circuit court sentenced Mohamed to serve thirty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years to serve and twenty years suspended upon Mohamed's successful completion of five years of supervised probation.

¶2.     Mohamed now appeals his conviction and sentence, asserting the following assignments of error: (1) the circuit court abused its discretion by excluding the testimony of Mohamed's expert witness; (2) the circuit court erred in allowing witnesses to refer to khat

as a Schedule I controlled substance; (3) the circuit court erred in limiting Mohamed's cross-examination of the State's forensic scientist; (4) the circuit court denied Mohamed his right to present his theory of defense; (5) the circuit court violated Mohamed's Sixth Amendment right to cross-examine a witness for the State; (6) the State committed a *Brady*[1] violation; and (7) cumulative error requires reversal of Mohamed's conviction and sentence.

¶3.    After our review, we find no error.  We therefore affirm Mohamed's conviction and sentence.

## FACTS

¶4.    In 2015, the Mississippi Attorney General's (AG) Office received an anonymous tip about the sale of a substance known as khat at Hakim's Mini Mart in Greenville, Mississippi. Khat is a plant that may contain the stimulant cathinone.[2]  Pursuant to Mississippi Code

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] This case is the first involving "khat" to appear before this Court.  The United States Court of Appeals for the Seventh Circuit has provided a descriptive explanation of "khat":

> This is the first case involving khat to appear before this Court, so we take the opportunity to explain it. Khat, . . . the common name for the plant Catha Edulis[,] grows in parts of East Africa and the Arabian Peninsula.  It is known as the drug-of-choice among Somali men who chew the leaves or mix them in with tea for the stimulant effects. It is not smoked or eaten in any fashion. The use of khat in Somalia is legal and an accepted pastime, and the plant is readily sold in the marketplace and stores. Estimates put its use among Somali men as being equivalent to caffeine or tobacco use among the American population.  U.S. pop culture has even referenced the use of khat in Somalia, including the 2001 Oscar-winning film Black Hawk Down.

> Khat "the plant" is not illegal in the United States. It is not listed in the U.S. Code or the Code of Federal Regulations (CFR) controlled substances

Annotated section 41-29-113(f)(3) (Supp. 2020), cathinone is a Schedule I controlled substance.

¶5.    As a result of this tip, the AG's Office facilitated a controlled buy of khat from Hakim's Mini Mart using a confidential informant.  Investigator Lee McDivitt of the AG's Office testified that he provided the confidential informant with $1,100 in "official undercover funds" and directed the confidential informant to use the funds to purchase khat from Mohamed, the owner of Hakim's Mini Mart.  Investigator McDivitt testified that prior to the controlled buy, the confidential informant's person and vehicle were searched.

¶6.    When the confidential informant returned to the agreed upon location after the controlled buy, investigators again searched the informant's person and vehicle.  Investigator McDivitt testified that the confidential informant returned from the controlled buy at

---

schedules.  The plant, however, contains two controlled substances, cathinone and cathine, that produce an energetic and excited state that allows a user to combat fatigue and function at a higher level.

. . . .

Cathinone, a Schedule I drug, has properties similar to those of amphetamine and is the stronger of the two controlled substances found in khat leaves. It was added to the U.S. Controlled Substance Act (CSA) in 1993. Cathine, on the other hand, is a Schedule IV controlled substance and the weaker of the two.  Not all khat leaves contain the same or similar amounts of either substance, however; some contain none. The regulation of khat then is dependent upon the particular chemical composition of each leaf, which may vary depending on the size of the plant and when the plant was harvested.

*United States v. Mire*, 725 F.3d 665, 667-68 (7th Cir. 2013) (citations omitted).

Hakim's Mini Mart with "numerous bags of a green leafy substance" believed to be khat. Investigator McDivitt observed that the substance was "wrapped up in individual zip lock bags for . . . individual sale."

¶7. Investigator McDivitt thereafter obtained a search warrant for Hakim's Mini Mart. Investigator McDivitt testified that he and other law enforcement officers searched the store. During the search, Investigator McDivitt utilized information obtained from the confidential informant and located additional bags of khat in a concealed location in the back of the store. Investigator McDivitt questioned Mohamed about the khat. According to Investigator McDivitt, Mohamed never denied ownership of the khat.

¶8. Mohamed informed Investigator McDivitt that he had "a small amount" of khat at his home. Mohamed signed a consent form to allow Investigator McDivitt to search his house. Investigator McDivitt and other law enforcement officers performed a search of Mohamed's home and discovered additional bags of khat in a bedroom closet, as well as a large digital scale, zip lock sandwich bags, and a bowl. Investigator McDivitt testified that the digital scale, bags, and bowl were located a few feet from the khat. Investigator McDivitt also testified that these items are "indicative of the sale of drugs and trafficking in narcotics." Investigator McDivitt specifically testified that the presence of the scale in close proximity to the khat was an indication of weighing and measuring drugs with the intent to sell them. Investigator McDivitt then secured the substance recovered from the store and Mohamed's home and sent it to the Mississippi Forensics Laboratory for testing.

4

¶9.     Diamonisha Jackson, a forensic scientist with the Mississippi Forensics Laboratory, testified as an expert in the field of drug analysis. Jackson testified that she analyzed the leafy green substance in the bags recovered from Mohamed's store and home. Jackson confirmed that the substance contained cathinone. Jackson explained that the total weight of the substance that she analyzed, weighed, and confirmed contained cathinone amounted to 4,507.96 grams. Jackson also confirmed that cathinone is a Schedule I controlled substance.

¶10.    After the AG's Office received the results from the Mississippi Forensics Laboratory confirming that the substance recovered from Mohamed's store contained cathinone, Mohamed was indicted for drug trafficking. Mohamed's indictment charged him with "unlawfully, willfully, knowingly, and feloniously possess[ing] with the intent to sell more than 30 grams of [c]athinone, a Schedule I, controlled substance, in violation of [s]ection 41-29-139."

¶11.    A trial was held May 29-30, 2019. At trial, the jury heard testimony from Investigator McDivitt, Jackson, and Mohamed. The circuit court excluded the testimony from Mohamed's expert witness after finding that the testimony was irrelevant and also not disclosed to the State in a timely or adequate manner.

¶12.    After the State rested, defense counsel moved for a judgment of acquittal, arguing that the State failed to prove that Mohamed had intent to sell an illegal drug. The circuit court denied Mohamed's motion, stating, "I think that the State has put on evidence of the quantity

and that there is evidence from which a jury could infer intent to transfer." Defense counsel later moved for a mistrial on the basis that "there's been repeated testimony from the stand from the State's witnesses regarding the khat plant being a controlled substance when it's not listed as a controlled substance." Defense counsel asserted that this "obviously confused the jury and it's highly prejudicial" to Mohamed. The circuit court overruled the motion, explaining that "I think that there is plenty of evidence that all of the green leafy substance that was presented in court contains the controlled substance [cathinone]."

¶13. Mohamed testified at trial that he had been "chewing" khat all of his life. Mohamed testified several times that he did not know that khat contained cathinone and that he did not intend to sell the cathinone. Mohamed stated that if he had known that khat contained cathinone, he "would not mess with it." Regarding the events leading up to his arrest, Mohamed testified that his friend contacted him and wanted to purchase some khat. Mohamed admitted that he weighed the khat using a scale and packaged the khat into individual bags that weighed the same amount. However, Mohamed maintained that he did not sell khat and that he would have given the khat to his friend free of charge. Mohamed testified that after his friend came to the store and picked up the khat, his friend "dropped" $1,100 and left the store.

¶14. The jury ultimately returned a verdict finding Mohamed guilty of drug trafficking, and the circuit court sentenced Mohamed to thirty years in the custody of the MDOC, with ten years to serve and twenty years suspended upon Mohamed's successful completion of five

6

years of supervised probation. The circuit court also ordered Mohamed to pay restitution, fees, and court costs.

¶15. Mohamed filed a motion for a new trial. The circuit court did not enter an order disposing of this motion; however, the motion was deemed denied under Mississippi Rule of Criminal Procedure 25.3. Mohamed now appeals.

## DISCUSSION

### I. Exclusion of Expert Witness

¶16. Mohamed argues that the circuit court erred in excluding his expert witness in the field of forensic toxicology, Dr. Mahmoud Elsohly. Mohamed asserts that the trial court improperly determined that Dr. Elsohly's testimony was not relevant. Mohamed also argues that the circuit court's exclusion of Dr. Elsohly as the result of a discovery violation by Mohamed "was far beyond any appropriate remedy and was an abuse of discretion." Mohamed claims that the circuit court's exclusion of his expert witness violated his fundamental right to present a witness in his favor to meet and rebut the testimony of the State's expert on the critical issue of a presence of cathinone.

¶17. We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Webb v. Braswell*, 930 So. 2d 387, 396-97 (¶15) (Miss. 2006); *Triplett v. River Region Med. Corp.*, 50 So. 3d 1032, 1039 (¶30) (Miss. Ct. App. 2010). "We will not reverse the trial court's decision to admit expert testimony unless it was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Garner ex rel. Garner v. State*, 247 So. 3d

7

345, 350 (¶14) (Miss. Ct. App. 2018) (internal quotation marks omitted).

¶18.   Pursuant to Mississippi Rule of Evidence 702, "expert testimony must be relevant and reliable." *Id*. at (¶15) (citing *Willie v. State*, 204 So. 3d 1268, 1273 (¶12) (Miss. 2016)).[3] Expert testimony "is relevant when it helps the jury understand the evidence or resolve a fact in issue." *Id*. Mississippi Rule of Evidence 401 further provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the case." M.R.E. 401. The circuit court acts as the gatekeeper and "must make a preliminary assessment regarding the scientific validity of the reasoning or methodology underlying the expert testimony and the proper application of that reasoning or methodology to the facts of the case at issue." *Garner*, 247 So. 3d at 351 (¶15).

¶19.   The record reflects that the State first challenged Dr. Elsohly's testimony through a

---

[3] Mississippi Rule of Evidence 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

(d)   the expert has reliably applied the principles and methods to the facts of the case.

motion in limine. In its motion, the State asserted that Dr. Elsohly's method of weighing cathinone was not recognized by Mississippi law and that therefore his results were irrelevant and inadmissible under Rule 401. During the pre-trial hearing on the State's motion in limine, the State argued that Dr. Elsohly's testimony regarding his method of weighing the substance was not relevant because Dr. Elsohly's method is "not the way drugs are weigh[ed] or the way [weight is] calculated" pursuant to the Mississippi Code. The State explained that according to Mississippi law, when a controlled substance is detected, the entire substance must be weighed. In support of its argument, the State cited to Mississippi Code Annotated section 41-29-139(c), which states that the penalty for drug trafficking, with respect to a Schedule I controlled substance, "shall be based on dosage unit as defined herein or the weight of the controlled substance as set forth herein." Subsection (c) further states that "[t]he weight set forth refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." In contrast, Dr. Elsohly's method of measurement employed a "quantitative analysis" that involved isolating the cathinone from the entire mixture and weighing it separately from the khat.

¶20. Defense counsel argued that Dr. Elsohly's expert testimony was necessary to put forth Mohamed's theory of the case—that Mohamed did not have the requisite intent to sell the cathinone. Defense counsel asserted that Dr. Elsohly's testimony would explain that based on when it is tested and how long it has been harvested, the khat plant can contain either cathinone, a Schedule I controlled substance, or cathine, a Schedule IV controlled substance,

9

or "nothing at all." Defense counsel maintained that it's "highly relevant" that "Dr. Elsohly can testify what the khat plant is, how the khat plant contains cathinone, [and] how the cathinone metabolizes into a Schedule IV [controlled substance] if not to anything else."

¶21. The State responded and argued that because it was undisputed that the khat at issue contained cathinone, Dr. Elsohly's testimony about whether the khat contained cathine was irrelevant. The State cited to section 41-29-139(c), which provides that "[i]f a mixture or substance contains more than one (1) controlled substance, the weight of the mixture or substance is assigned to the controlled substance that results in the greater punishment." The State argued Dr. Elsohly's expert report stated that after testing the khat recovered from Mohamed's store and home, he found that it contained cathinone.

¶22. The circuit court granted the State's motion in limine after finding that Dr. Elsohly's testimony regarding his quantitative analysis of the khat recovered from Mohamed's store and home was not relevant. The circuit court specifically ruled that Dr. Elsohly was excluded from testifying "about quantitative analysis, deterioration of cathinone in a substance into something else, because the evidence is that cathinone was present in this green leafy substance, and all of that other stuff is irrelevant."

¶23. At trial, after the State rested its case-in-chief, Mohamed informed the circuit court that he intended to call Dr. Elsohly to testify about his background on the drug cathinone and to opine on the State's analysis and supporting data. The State argued that Mohamed failed to turn over his witness disclosure until two days before trial was set to begin (and after the

10

State had filed its initial motion in limine). The State also argued that Dr. Elsohly's disclosure did not state that he intended to testify about reduction rates of the cathinone in the khat plant. The State asserted that without proper notice, it could not adequately prepare for cross-examination or secure rebuttal expert testimony. After hearing arguments and reviewing the witness disclosure, the circuit court ruled that it was excluding Dr. Elsholy's testimony "because the notice of this witness does not adequately inform the State of this other stuff that you're proposing that he testify about." However, the circuit court allowed Dr. Elsohly to proffer his testimony for the record.

¶24. At the conclusion of the proffer, Mohamed asked the circuit court to reconsider its ruling excluding Dr. Elsohly. The circuit court declined to revisit its ruling, explaining that Mohamed "had an obligation . . . to disclose what [Dr. Elsohly] was gonna testify about" and that Mohamed failed to meet that obligation. The circuit court found that Mohamed's witness disclosure regarding Dr. Elsohly failed to properly disclose his expert opinion testimony to the State. The circuit court observed that the disclosure stated Dr. Elsohly would "testify about anything that comes up in the trial[,]" and the circuit court concluded that "[i]f that's a fair disclosure that would . . . work for any witness that would ever come in a circuit court." The circuit court also reiterated that Dr. Elsohly's testimony on quantitative analysis and cathinone and cathine was already excluded as irrelevant.

¶25. After our review, we find that the circuit court did not err in excluding Dr. Elsohly's testimony as irrelevant. Dr. Elsohly's method of quantitative analysis did not weigh the

cathinone at issue in the matter mandated by the Mississippi Code. Therefore, his testimony would not have "assist[ed] the trier of fact in understanding or determining a fact at issue." *Gray v. State*, 202 So. 3d 243, 258 (¶52) (Miss. Ct. App. 2015) (quoting *Ross v. State*, 954 So. 2d 968, 996 (¶57) (Miss. 2007)). Similarly, Dr. Elsohly's testimony as to the deterioration of cathinone was also irrelevant and inadmissible under Rule 401. Section 41-29-139(c) states that "[i]f a mixture or substance contains more than one (1) controlled substance, the weight of the mixture or substance is assigned to the controlled substance that results in the greater punishment." Because it was undisputed that the khat found in Mohamed's possession contained cathinone, which is the "controlled substance that results in the greater punishment" for purposes of section 41-29-139(c), we find that Dr. Elsohly's testimony regarding whether the khat contained the Schedule IV controlled substance cathine was irrelevant.

¶26. As to Mohamed's claim that the circuit court abused its discretion in excluding the remainder of Dr. Elsohly's testimony as the result of Mohamed's discovery violation, we recognize that "[a] defendant has a constitutional right to call witnesses in his or her favor." *Turner v. State*, 292 So. 3d 1006, 1020 (¶39) (Miss. Ct. App. 2020); *see* U.S. Const. amend. VI; Miss. Const. art. 3, § 26. "However, a defendant also must meet certain discovery requirements regarding the testimony of witnesses." *Turner*, 292 So. 3d at 1020 (¶39). "Prior to trial, if the court determines that a party has violated discovery procedures, it may order the discovery of the information not previously disclosed, grant a continuance, or

"enter such an order as it deems just under the circumstances." *Myers v. State*, 145 So. 3d 1143, 1149 (¶15) (Miss. 2014). The Mississippi Supreme Court has instructed that when sanctioning a party due to a discovery violation, "[t]he weight of the sanction should be based on the motivation of the offending party in violating the discovery rule." *Id.* We recognize that "[t]he general rule is that evidence must not be excluded." *Id.* However, "where the court determines that a discovery violation is 'willful and motivated by a desire to obtain a tactical advantage,' exclusion of the evidence may be entirely proper." *Id.* (quoting *Darby v. State*, 538 So. 2d 1168, 1176 (Miss. 1989)).

¶27. This Court applies an abuse of discretion standard to its review of a circuit court's decisions "regarding matters of evidence, relevancy and discovery violations." *Turner*, 292 So. 3d 1020 (¶38) (quoting *Montgomery v. State*, 891 So. 2d 179, 182 (¶6) (Miss. 2004)). In so doing, "[t]his Court must determine '(1) whether such a violation occurred [and,] if so, (2) whether the exclusion of this evidence was an appropriate remedy.'" *Id.* (quoting *Myers*, 145 So. 3d at 1147 (¶10)).

¶28. As stated, Mohamed disclosed the contents of Dr. Elsohly's proposed testimony two days before trial. After reviewing the disclosure, the circuit court found that it did not adequately inform the State about Dr. Elsohly's proposed testimony and accordingly excluded Dr. Elsohly's testimony. After our review, we find that the circuit court was within its discretion to exclude the remainder of Dr. Elsohly's testimony due to the circuit court's determination that Mohamed failed to timely or adequately disclose the content of Dr.

13

Elsohly's expert opinions.[4]

¶29.    The supreme court has held that "even if error is found in the 'admission or exclusion of evidence,' we will not reverse the [circuit] court's ruling 'unless the error adversely affects a substantial right of a party.'" *APAC Miss. Inc. v. Johnson*, 15 So. 3d 465, 471 (¶11) (Miss. Ct. App. 2009) (quoting *Haggerty v. Foster*, 838 So. 2d 948, 960 (¶35) (Miss. 2002)); *see also Simmons v. State*, 805 So. 2d 452, 488 (¶92) (Miss. 2001) ("It is also well settled that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right is affected by the ruling."). Mohamed claims that the circuit court's exclusion of Dr. Elsohly violated his fundamental right to present a witness in his favor to meet and rebut the testimony of the State's expert on the issue of the presence of cathinone. However, Dr. Elsohly's proffered testimony reflects that after testing the khat recovered from Mohamed's store and home, he found that cathinone was in fact present. The record also reflects that despite the exclusion of Mohamed's expert witness, Mohamed was still able to adequately present his theory of the case, which we discuss further below. Therefore,

---

[4] The circuit court excluded portions of Dr. Elsohly's expert testimony at two different points during Mohamed's trial proceedings: (1) pre-trial, when the circuit court granted the State's motion in limine and ruled that portions of Dr. Elsohly's testimony were not relevant and were therefore inadmissible, and (2) during trial, when the circuit court excluded portions of Dr. Elsohly's testimony as a sanction for Mohamed's untimely and improper witness disclosure regarding Dr. Elsohly's proposed testimony. Although these two separate rulings effectively resulted in the exclusion of all of Dr. Elsohly's testimony, it is important to clarify that the circuit court did not exclude all of Dr. Elsohly's expert testimony as a sanction for the discovery violation—the circuit court only excluded the portion the State objected to due to the untimely and improper witness disclosure.

Mohamed has not shown that he was prejudiced by the exclusion of Dr. Elsohly's testimony.

## II. Referring to Khat as a Schedule I Controlled Substance

¶30. Mohamed argues that the circuit court erred in allowing the State's witnesses to repeatedly refer to khat as a Schedule I controlled substance. Mohamed asserts that the khat plant itself is not a controlled substance. Mohamed also claims that when he began cross-examining Investigator McDivitt and Jackson about the khat plant, the State objected, and the circuit court sustained the objections on the ground of relevancy. Mohamed argues on appeal that he "should have been allowed to explore potential bias on cross-examination, because the State's witnesses were clearly biased."[5]

¶31. This Court reviews a circuit court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *Liddell v. State*, 281 So. 3d 34, 37 (¶5) (Miss. Ct. App. 2019). We recognize that "Mississippi allows wide-open cross-examination of any matter that is relevant, including the possible interest, bias, or prejudice of the witness." *Anthony v. State*, 108 So. 3d 394, 397 (¶6) (Miss. 2013). "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." *Id*. (quoting M.R.E. 616).

¶32. In the present case, although Mohamed objected during the testimony from the State's

---

[5] In this assignment of error, Mohamed again raises the argument that the circuit court prevented him from pursuing questions concerning the quantitative analysis and the chemical structures of cathinone and cathine, and Mohamed claims that his questions "were clearly relevant." We discussed Mohamed's argument regarding the relevancy of quantitative analysis and the difference between cathinone and cathine above.

15

witnesses, he never stated that he was objecting on the ground of bias. "An objection to the introduction of evidence must be accompanied by a statement of the 'specific ground of objection[.]'" *McNair v. State*, 814 So. 2d 153, 155 (¶6) (Miss. Ct. App. 2001) (quoting M.R.E. 103(a)(1)). This Court has declined to consider "whether the barred line of inquiry somehow prevented [the defendant] from showing that [the witness] was biased" where the issue was "raised for the first time on appeal." *Id.*

¶33. The record reflects that during trial, defense counsel objected to Investigator McDivitt's testimony referring to khat as a "drug." Defense counsel argued that although cathinone is a Schedule I controlled substance, the khat plant itself "is not a drug." The circuit court instructed the State to direct Investigator McDivitt "to refer to [the khat plant] as a green leafy substance." Arguments continued between counsel for the State and defense counsel as to whether the substance recovered from Mohamed's store was a "drug." The circuit court ultimately overruled defense counsel's objection, stating, "This is all semantics."

¶34. Mohamed also argues that Jackson provided false testimony by stating that khat was a Schedule I controlled substance. Mohamed further asserts that Jackson testified falsely that "all" of the khat she received from the AG's Office contained cathinone. However, the record reflects that Jackson testified that she did *not* test all of the khat that was submitted in Mohamed's case. Jackson explained that pursuant to the standard operating procedures of the Mississippi Forensics Laboratory, forensic scientists utilize a sampling plan when testing substances. This Court has held that "a forensic chemist is generally not required to

16

test all of the suspected narcotic substance to opine that the recovered substance as a whole contains narcotics." *O'Kelly v. State*, 267 So. 3d 282, 290 (¶27) (Miss. Ct. App. 2018). Rather, "random testing is permissible when the seized samples are sufficiently homogeneous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." *Id*. The transcript further reflects that the State asked Jackson, "*Of the drugs that you analyzed and weighed and confirmed that was cathinone*, what was total the weight?"[6] (Emphasis added). Jackson then provided a final cathinone weight calculation based only on the khat that she tested.

¶35.    Furthermore, the record shows that Mohamed was allowed to cross-examine Jackson regarding the issue of whether khat is a Schedule I controlled substance. During cross-examination, defense counsel asked Jackson if the khat plant is a Schedule I controlled substance. Jackson answered that according to the standard operating procedures for the Mississippi Forensics Laboratory, which is based on the Mississippi Code, "any preparation or mixture of the substance is that particular substance." Jackson further explained that "cathinone is a Schedule I controlled substance. So the entirety [of the khat plant recovered from Mohamed] is a Schedule I controlled substance."

¶36.    Mississippi Code Annotated section 41-29-113 sets forth a list of Schedule I controlled substances. Subsection (f) provides a list of stimulants that are classified as

---

[6] The record reflects that defense counsel objected to the State referring to the substances tested as "drugs." The circuit court overruled the objection.

17

Schedule I controlled substances. According to subsection (f), a Schedule I controlled substance is "any material, compound, mixture[,] or preparation which contains any quantity of the following central nervous system stimulants." Cathinone is listed under subsection (f) as a stimulant that is classified as a Schedule I controlled substance. Therefore, in the present case, because the evidence showed that the khat recovered from Mohamed's store and home contained "any quantity" of cathinone, the khat is therefore classified as a Schedule I controlled substance.

¶37. After our review of this issue, we find no abuse of discretion by the circuit court.

### III. Cross-Examination of Jackson

¶38. Mohamed next argues that the circuit court erred by not letting him cross-examine Jackson on the quantitative analysis method for calculating the weight and quantity of the cathinone. Mohamed asserts that Jackson testified that when she tested the leafy green substance submitted to the Mississippi Forensics Laboratory, she utilized "blanks" in between the tests. Mohamed therefore maintains that the State opened the door for him to cross-examine Jackson on the quantitative analysis of the substance because the "blanks" affect the correct calculation of quantity and weight of the substance tested. Mohamed further contends that Dr. Elsohly should have been able to testify regarding Jackson's use of "blanks" during the testing process.

¶39. We recognize that "[t]he right to cross-examination is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable

against the states by the Fourteenth Amendment." *Farmer v. State*, 301 So. 3d 731, 734 (Miss. Ct. App. 2020). "While defense counsel has wide latitude in cross-examination, 'the trial court in its discretion has the inherent power to limit cross-examination to relevant matters.'" *Id*. (quoting *Mixon v. State*, 794 So. 2d 1007, 1013 (¶20) (Miss. 2001)); *see also Mitchell v. State*, 792 So. 2d 192, 217 (¶97) (Miss. 2001) ("M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant."). We review a circuit court's limitation of cross-examination due to relevancy for an abuse of discretion. *Id*. (citing *Zoerner v. State*, 725 So. 2d 811, 813 (¶7) (Miss. 1998)). We also review a trial court's determination about "whether a party opens the door for an opposing party to inquire about otherwise inadmissible evidence" for an abuse of discretion. *Pettus v. State*, 295 So. 3d 993, 1005 (¶47) (Miss. Ct. App. 2020) (quoting *Robinson v. Corr*, 188 So. 3d 560, 572 (¶38) (Miss. 2016)).

¶40. The State maintains, and we agree, that Jackson's testimony regarding her use of "blanks" bore no connection to how Jackson calculated the weight of the khat recovered from Mohamed's store and home. Jackson testified that the Mississippi Forensic Laboratory's standard operating procedure requires forensic scientists to run a "blank" submission in between testing each sample. Jackson explained that the purpose for running a blank submission between each sample was to show that "there is no carryover from a previous sample into the other." In other words, the purpose of running a blank submission between each sample does not affect the weight of the substance; rather, it is to prevent

contamination. Therefore, we find that Jackson's testimony regarding her use of blanks did not "open the door" for cross-examination on the use of quantitative analysis.

¶41. The record further reflects that defense counsel cross-examined Jackson regarding her use of blanks when testing the leafy green substance. During cross-examination, defense counsel informed Jackson that he subpoenaed the Mississippi Forensics Laboratory requesting "all analytical testing data" from Mohamed's case. Defense counsel handed Jackson the document he received and asked Jackson to identify the blank submissions that she ran during testing. Jackson reviewed the document, and she acknowledged that the document did not contain the blank submissions that she ran after each sample. Jackson testified, however, that she was not sure if the document obtained by defense counsel was a full copy, as she was not personally subpoenaed to produce the documents. Jackson testified that although the document obtained by defense counsel did not contain the blank submissions, she did utilize blanks in her analysis and had the data regarding the blank submissions "backed up on [her] instrument" in the laboratory.

¶42. After our review, we find that the circuit court did not abuse its discretion in limiting Mohamed's cross-examination of Jackson regarding quantitative analysis.

### IV. Theory of the Case

¶43. Mohamed argues that the circuit court improperly denied him the right to present a defense to support his theory that he lacked the requisite specific intent to sell cathinone. Mohamed asserts that the circuit court erred in refusing to give proposed jury instruction D-

19, which would have instructed the jury on the meaning of "specific intent." Mohamed maintains that no other jury instruction specifically articulated his theory of the case.

¶44.   We review the circuit court's giving or refusal of jury instructions for an abuse of discretion.  *Taylor v. State*, 109 So. 3d 589, 595 (¶18) (Miss. Ct. App. 2013).  "When reviewing the giving or refusal of jury instructions, we do not view the jury instructions in isolation, but instead we consider them as a whole."  *Id*. (citing *Rushing v. State*, 911 So. 2d 526, 537 (¶24) (Miss. 2005)).

¶45.   The supreme court has held that a "defendant has a right to have the jury instructed as to his theories of defense that are supported by the evidence, no matter how meager or unlikely."  *Newell v. State*, 292 So. 3d 239, 242 (¶13) (Miss. 2020); *see also Banyard v. State*, 47 So. 3d 676, 682 (¶17) (Miss. 2010) (A defendant has a right to have the jury instructed as to his theory of defense "even if the supporting evidence is weak, inconsistent, or of doubtful credibility." (internal quotation marks omitted)).  "Refusing to allow the defendant to present his theories of defense compromises the right to a fair and impartial trial."  *Newell*, 292 So. 3d at 242 (¶13).  However, the supreme court has clarified that although a defendant is entitled to jury instructions that present his theory of the case, the circuit court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence."  *Harris v. State*, 861 So. 2d 1003, 1012-13 (¶18) (Miss. 2003).

¶46.   The record reflects that during the jury instruction conference, Mohamed submitted

21

jury instruction D-19. Instruction D-19 stated as follows:

> The crime charged in this case requires proof of specific intent before [Mohamed] can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that [Mohamed] knowingly did an act which the law forbids (or knowingly failed to do an act which the law requires), purposely intending to violate the law.

¶47. The State objected to Mohamed's proposed instruction D-19, asserting that its element instruction S-2A contained that the terms "willfully and knowingly" and therefore covered the element of intent. Defense counsel responded that instruction D-19 "defines what specific intent is, although S-2A says willfully, knowingly and unlawfully, but it doesn't necessarily go forward and tell the jury that Mr. Mohamed must have knowingly done something that the law forbids purposefully intending to violate the law." Defense counsel further explained, "This is a specific intent crime and we believe that the jury should be instructed on what specific intent is." The circuit court ultimately refused the instruction.

¶48. The record reflects that the circuit court granted the State's proposed element instruction S-2A. Instruction S-2A provides:

> [Mohamed] has been charged with the offense of Trafficking of more than 200 grams of Cathinone, a Schedule I Controlled Substance:
>
> If you find from the evidence in this case beyond a reasonable doubt that:
>
> 1. On or about the 17th day of September in 2015, in Washington County, Mississippi;
>
> 2. That Mohamed Mohamed did *unlawfully, willfully, knowingly and feloniously and without the authority of the law*;

22

    3.  Possess with intent to sell more than 30 grams of Cathinone, a Schedule I controlled substance.

then you shall find [Mohamed] guilty of Trafficking[.]

If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the defendant not guilty of Trafficking of more than 30 grams of Cathinone, a Schedule I Controlled Substance, as charged in the indictment.

(Emphasis added).

¶49. Regarding a defendant's intent to commit an illegal act, the supreme court has deemed the terms "'willfully,' 'knowingly,' and 'intentionally' . . . to be interchangable." *Lyles v. State*, 12 So. 3d 532, 539 (¶21) (Miss. Ct. App. 2009) (citing *Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996)). "Moreover, 'wilful' means nothing more than doing an act intentionally." *Id*. "The charge that one wilfully did an act is to charge he intended doing such act." *Id*. Because instruction S-2A contains the terms willfully and knowingly, we find that it properly instructed the jury as to the requisite intent necessary to find Mohamed guilty of the crime of drug trafficking pursuant to section 41-29-139.[7]

¶50. As to Mohamed's proposed instruction D-19, this Court has held that a circuit court properly refused to give a jury instruction that defined the words "knowingly" and "unwillfully" as meaning "that the act was committed voluntarily and purposely, with the

---

[7] Additionally, instruction S-2A tracks the statutory language of section 41-29-139(a)(1), the statute under which Mohamed was indicted and that sets forth the elements of drug trafficking. The supreme court has "consistently held that instructions in a criminal case which follow the language of a pertinent statute are sufficient." *Crenshaw v. State*, 520 So. 2d 131, 135 (Miss. 1988).

specific intent to do something the law forbids; that is to say with a bad purpose either to disobey or disregard the law." *Roberson v. State*, 287 So. 3d 219, 231 (¶28) (Miss. Ct. App. 2017). Instruction D-19 states, in pertinent part, "To establish specific intent the government must prove that [Mohamed] knowingly did an act which the law forbids (or knowingly failed to do an act which the law requires), purposely intending to violate the law." In *Roberson*, this Court explained that "the language . . . defining 'knowingly' and 'willfully' as requiring 'specific intent to disobey or disregard the law' was misleading." *Id*. at 232 (¶32). This Court recognized that "[m]any courts have discouraged jury instructions attempting to define the intent required to commit a crime as confusing, and instead encouraged the use of elements instructions to set out the mental state required to commit the crime." *Id*. at (¶33).

¶51.    Mohamed also claims that he was unable to testify regarding his knowledge of khat and whether he was aware that the khat in his possession contained cathinone. Mohamed asserts that because this evidence was relevant to his state of mind and to his theory of the case, the circuit court erred in excluding this evidence. However, we find Mohamed's claim that the circuit court improperly excluded evidence showing that Mohamed lacked the requisite intent to sell cathinone unsupported by the record. The transcript reflects that Mohamed was questioned multiple times during direct examination and re-direct examination about whether he knew that the khat contained cathinone or whether he intended to sell cathinone:

Q.    . . . Did you know that the khat plant contained cathinone?

24

A.    I don't know.  I know it got something on it like green leafy.

. . . .

Q.    Do you know what cathinone is?

A.    I don't know.

. . . .

Q.    Mr. Mohamed, did you know the khat plant that you had contained cathinone?

A.    I don't know.

Q.    Did you intend to sell cathinone?

A.    I do not sell. I mean, I do not—if I known it got cathinone on it I would not touch it.  I would not touch it.

. . . .

Q.    Okay. Did you know the khat plant contained the illegal substance cathinone?

A.    I don't know.  I don't know.

. . . .

Q.    Did you intend to sell cathinone?

A.    If I know it was like that I will not mess with it.

¶52.    After our review, we find that the circuit court adequately instructed the jury on Mohamed's theory of the case.  We find no abuse of discretion in the circuit court's refusal of proposed instruction D-19.

### V.    Right to Cross-Examination of Witnesses

¶53. Mohamed again argues that this Court should reverse his conviction and sentence because of "blatant violations of the Sixth Amendment." Mohamed repeats that his Sixth Amendment right was violated by the circuit court's denying Mohamed the opportunity to challenge certain testimony through cross-examination: the testimony from State's witnesses referring to khat as a Schedule I controlled substance; Jackson's testimony that all of the bags of khat recovered from Mohamed's store and home contained cathinone; and Jackson's testimony regarding the utilization of "blanks." This Court has already addressed these issues, and we have found no abuse of discretion. We therefore also find no violation of Mohamed's Sixth Amendment right to cross-examine the testimony of the State's witnesses.

## VI. *Brady* Violation

¶54. Mohamed next argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce Jackson's entire file documenting her tests on the khat plant and Investigator McDivitt's notes from his investigation.

¶55. The United States Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. The Mississippi Supreme Court has established the following four-part test to assess whether a *Brady* violation had occurred, thus mandating a new trial:

> The defendant must prove: (a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d)

26

that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Manning v. State*, 929 So. 2d 885, 891 (¶15) (Miss. 2006). Mohamed, as the defendant, "must meet all four prongs of the test" in order to prove that a *Brady* violation occurred. *Howard v. State*, 945 So. 2d 326, 340 (¶22) (Miss. 2006).

¶56. Turning to Mohamed's claim regarding Investigator McDivitt's "notes," the record reflects during cross-examination of Investigator McDivitt, defense counsel asked him if he had any notes regarding his conversation with Mohamed about searching Mohamed's home. Investigator McDivitt testified that his report from the investigation was a memorialization of his notes, explaining, "I memorialized everything into my report. It's right here written down. You asked me if I wrote it down. I wrote it down in my report, so . . . these are my notes memorialized." Defense counsel then asked whether Investigator McDivitt had any notes to substantiate his report. The following exchange occurred:

Q.     Let me ask you like this: Prior to writing this report, did you take any notes whatsoever regarding your investigation? That's either a yes or no, then you can explain.

. . . .

A.     No. I've got my notes right here. I took my notes off my investigations and the materials that I found. I have a signed consent to search form which I memorialized in this, and these are my notes that have been turned over in discovery I don't know what else—these are my notes.

Q.     So you don't have any other notes?

A.     No, sir.

27

¶57. Investigator McDivitt testified that he did not take any notes separate from what he memorialized in his report. Because these notes did not exist, the State therefore did not possess them and could not turn them over to Mohamed. Furthermore, Mohamed has not proved that these notes, if they existed, would have been favorable to him. The supreme court has explained that "[e]vidence is favorable to an accused when the evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Howard v. State*, 945 So. 2d 326, 337 (¶11) (Miss. 2006) (internal quotation marks omitted) (quoting *Simon v. State*, 857 So. 2d 668, 699 (¶86) (Miss. 2003)).

¶58. Mohamed also argues that Jackson's file documenting her tests on the khat recovered from Mohamed's store and home, specifically the data regarding the blank submissions she ran in between testing each sample, is exculpatory because the file shows that Jackson did not properly perform the tests. As stated above, at trial, Jackson confirmed that the documents Mohamed subpoenaed did not contain her data documenting the blank submissions that she ran in between testing each sample. Jackson testified that she did in fact utilize the blank submissions in her testing, and she stated that the data confirming this testing was backed up on her instrument.

¶59. The record reflects, and Mohamed acknowledges in his appellate brief, that he does possess the documents from the Mississippi Forensics Laboratory. However, he asserts that

28

"the State did not voluntarily produce them," and he had to therefore subpoena the documents. He also asserts that the documents do not contain the data regarding the blank submissions. In *Chamberlin v. State*, 55 So. 3d 1046, 1055 (¶31) (Miss. 2010), the supreme court held that "[t]o prove a *Brady* violation, a defendant must show, among other things, that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." (Internal quotation mark omitted). Mohamed has not met his burden of showing that if he had received the data concerning the blank submissions, then "a reasonable probability exists that the outcome of the proceedings would have been different." *Id*. Furthermore, the evidence and testimony at trial shows that Jackson utilized the blank submissions to prevent contamination of the substance during testing. The blank submissions were not used to calculate the weight of the khat recovered from Mohamed's store and house. As a result, we find that Mohamed also failed to show that this evidence was favorable to the defense.

¶60. After our review, we find no merit to Mohamed's assertion that the State violated *Brady*.

## VII. Cumulative Error

¶61. Finally, Mohamed asserts that the cumulative effect of the errors at trial mandates reversal of his conviction.[8] "The cumulative error doctrine stems from the doctrine of

---

[8] Mohamed sets forth his final assignment of error under the heading "Mr. Mohamed's conviction should be reversed due to the cumulative effect of the errors and the court's refusal to recuse." However, Mohamed does not develop his recusal argument any

harmless error, which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Lyons v. State*, 237 So. 3d 763, 774 (¶46) (Miss. Ct. App. 2017). "However, reversal based upon cumulative error requires a finding or findings of error." *Id*.

¶62.    As discussed, this Court has found no error in any of Mohamed's above issues on appeal.  Therefore, the cumulative error doctrine does not apply.  *See Morrow v. State*, 275 So. 3d 77, 85 (¶31) (Miss. 2019) ("Because no cumulative harmless errors require reversal, the cumulative error doctrine is inapplicable.").

¶63.    However, Mohamed sets forth two additional assignments of error under this issue: that section 41-29-113 is void for vagueness and that the circuit court erred by not allowing Mohamed to elicit any evidence or testimony regarding his lack of intent.

        *A.     Section 41-29-113*

¶64.    Mohamed argues that section 41-29-113 is unconstitutionally vague and therefore void because the statute does not list the khat plant as a controlled substance.  Mohamed did not raise the issue of the constitutionality of section 41-29-113 at trial.  Generally, this Court will not address issues raised for the first time on appeal.  *Nolan v. State*, 182 So. 3d 484, 491 (¶28) (Miss. Ct. App. 2016).  However, we recognize that where the defendant raises an error

---

further than the heading.  We therefore decline to engage in a discussion of this issue.  *See Kleckner v. State*, 109 So. 3d 1072, 1080 (¶12) (Miss. Ct. App. 2012) ("Failure to cite relevant authority obviates the appellate court's obligation to review such issues.").

for the first time on appeal, and the error affects the defendant's "fundamental, substantive right," we can address the error under the plain error doctrine. *Id.* (quoting *Burdette v. State*, 110 So. 3d 296, 303 (¶23) (Miss. 2013)). The supreme court has specifically stated that "a conviction under an unconstitutionally vague statute violates the Due Process Clause, and is an error affecting a fundamental constitutional right." *Id.* (internal quotation marks omitted) (quoting *Fulgham v. State*, 47 So. 3d 698, 700 (¶6) (Miss. 2010)). We will therefore address Mohamed's assignment of error.

¶65. We recognize that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 492 (¶30) (quoting *Fulgham*, 47 So. 3d at 701 (¶8)). "[T]he test is whether the language conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* Mohamed, as the challenging party, bears the burden of proving "the statute's unconstitutionality beyond a reasonable doubt." *Id.* (citing *Crook v. City of Madison*, 168 So. 3d 930, 935 (¶14) (Miss. 2015)). "Statutes are given a strong presumption of validity, and all doubts must be resolved in favor of the statute." *Id.*

¶66. Although Mohamed's appellate brief contains authority concerning the void-for-vagueness doctrine, Mohamed does not "frame his argument according to the vagueness test followed by Mississippi courts." *Qasoon v. State*, 232 So. 3d 831, 833 (¶3) (Miss. Ct. App.

31

2017). Mohamed simply asserts that "the [k]hat plant is not listed as a controlled substance pursuant to [section] 41-29-113, as such it is unconstitutionally vague. Because of these defects, the [s]tatute fails to protect against 'arbitrary and discriminatory' enforcement of its provisions. Accordingly, the statute is unconstitutionally vague and therefore void." Mohamed does not further develop his argument as to why the statute is unconstitutional.

¶67. The record reflects that Mohamed's indictment did not charge him with selling khat. Rather, Mohamed was charged with "unlawfully, willfully, knowingly and feloniously possess[ing] with the intent to sell more than 30 grams of [c]athinone." As stated above, cathinone is an active ingredient and stimulant that can be found in the khat plant. Because Mohamed was indicted for selling cathinone, not khat, and because section 41-29-113 lists cathinone is a Schedule I controlled substance, we find no merit to Mohamed's argument that the statute is void for vagueness. *See United States v. Mire*, 725 F.3d 665, 672 (7th Cir. 2013) ("The issue here is not whether the statute is vague in and of itself. [The statute] specifically provides that cathinone . . . [is a] controlled substance[].").

¶68. In its brief, the State provides helpful guidance from the Seventh Circuit Court of Appeals. In *Mire*, the defendants argued that the United States Controlled Substances Act (CSA) "violates the Due Process Clause because the regulations do not provide sufficient notice to persons of ordinary intelligence that khat plants may contain cathinone or cathine and, therefore, may be illegal to possess." *Id*. The *Mire* court determined that "[t]he issue here is not whether the statute is vague in and of itself" because "[t]he CSA specifically

32

provides that cathinone and cathine are controlled substances." *Id*. The *Mire* court clarified that the defendants were actually arguing that although cathinone is specifically prohibited, "the regulations do not give an ordinary person any indication that khat is illegal, and in fact, tend to suggest that it is not illegal." *Id*. The *Mire* court explained that the defendants based their argument "on the fact that 'khat' is not listed in the CSA or the regulations, yet it still may be illegal to possess at certain times, depending on . . . whether it contains cathinone[.]" *Id*. The court then more aptly described the statutes at issue as "'underinclusive,' because persons of ordinary intelligence would not necessarily know that khat is (or contains) a controlled substance even after reading the statutory text, as opposed to a statute that cannot be understood on its face." *Id*.

¶69.    The *Mire* court recognized, however, that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at 674 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 499 (1982)). The *Mire* court found that because the statutes at issue required that the defendants have "'actual knowledge' that khat contains a controlled substance," the statutes therefore "contain a scienter requirement." *Id*. Specifically, the statutes contained language requiring that the defendants committed the offense "knowingly" or "intentionally." *Id*. The *Mire* court ultimately held that although the CSA did not include the word "khat," "this does not invalidate the statutes at issue on Due Process grounds[.]" *Id*.

¶70. The "possession with intent to distribute" statute at issue in *Mire* states, "Except as authorized by this subchapter, it shall be unlawful for any person *knowingly or intentionally* (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1) (emphasis added). Similarly, section 41-29-139(a)(1), the statute under which Mohamed was charged, states, "Except as authorized by this article, it is unlawful for any person *knowingly or intentionally*: (1) [t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance[.]" (Emphasis added). Therefore, in order for Mohamed to have been convicted of drug trafficking, the jury had to find that he "knowingly or intentionally" possessed the controlled substance cathinone with intent to distribute. We find that the scienter requirement of section 41-29-139 mitigates any vagueness with respect to the failure of section 41-29-113 to list "khat" as a controlled substance. Accordingly, we find that Mohamed has failed to meet his burden of proving that section 41-29-113 is unconstitutional.

### B. Intent

¶71. Mohamed next argues that the circuit court did not allow him to elicit any evidence or testimony regarding his lack of intent. Mohamed takes issue with the circuit court's statement that "[t]he cathinone is illegal. If they can prove [Mohamed] possessed the cathinone; it doesn't matter what he knew."

¶72. We recognize that "in a drug-trafficking case, the issue of intent is always material."

34

*Johnson v. State*, 44 So. 3d 1040, 1044 (¶16) (Miss. Ct. App. 2010) (quoting *United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005)). Despite the circuit court's incorrect statement regarding intent, our review of the record shows that the circuit court did not prevent Mohamed from putting forth evidence to prove he lacked intent to commit his crime. As stated, Mohamed was allowed to testify several times during direct examination and re-direct examination regarding his intent to sell cathinone or his knowledge that the khat he possessed contained cathinone. We have also found that the circuit court properly instructed the jury on the mental state and intent required to commit the crime of drug trafficking under section 41-29-139.

¶73. After our review, we find no error by the circuit court. We therefore affirm Mohamed's conviction and sentence.

¶74. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**McCARTY, J., CONCURRING IN PART AND IN RESULT:**

¶75. I concur with the majority's finding that portions of Dr. Elsohly's testimony were properly excluded as irrelevant. I also concur with majority's conclusion that the exclusion of the remainder of Dr. Elsohly's proposed testimony does not warrant reversal. However, I write separately because precedent requires we take a different path than the one taken by

the majority in reaching this result.

¶76.   While the majority cites to *Myers*, it neither follows nor embraces the rule from the case.  The Supreme Court was adamant that "exclusion of evidence is a radical sanction that ought be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage."  *Myers v. State*, 145 So. 3d 1143, 1149 (¶15) (Miss. 2014) (internal quotation marks omitted).  The untimely disclosure of a witness, standing alone, is not sufficient to justify such a "radical sanction[.]" *Id*. at 1150 (¶17).

¶77.   The *Myers* Court held that it was an abuse of discretion for a trial court to exclude an untimely-disclosed witness without evidence that the latent disclosure "was motivated by a desire to obtain a tactical advantage[.]" *Id*.

¶78.   Exclusion of evidence is an extreme measure and one that trial courts should only reluctantly deploy.  Accordingly, the trial court's exclusion of the remainder of Dr. Elsohly's testimony was a "radical sanction" that constituted an abuse of discretion.  However, as stated by the majority, "Mohamed has not shown that he was prejudiced by the exclusion of Dr. Elsohly's testimony."  Maj. Op. at (¶29).  Therefore, the exclusion was harmless error and does not warrant reversal.

¶79.   For these reasons, I respectfully concur in part and in the result.

   **WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**